UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARNELL HUNNICUTT, SR.

   -PLAINTIFF-

    VS.

ANTHONY BRUNO, ANGEL QUIROS,
LAUREN POWERS, DARRYL LITTLE,
ROBERT BERND, EDWARD MALDONADO,
STEPHEN FAUCHER & KEVIN BRACE ARE
ALL BEING SUED IN BOTH
THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES.

   DEFENDANTS

CIVIL DOCKET NO. 3:10 CV 1996 (CSH)



## SUPPLEMENTAL COMPLAINT

1. THIS IS A CIVIL RIGHTS ACTION FILED BY CARNELL HUNNICUTT, SENIOR, A STATE PRISONER TO ADDRESS DISCRIMINATORY PRISON POLICIES AND PRACTICES THAT BURDENS AND PREVENTS HIM FROM PRACTICING HIS RELIGION OR HINDER HIS ABILITY TO DO SO.

### JURISDICTION

2. THE COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO 42 U.S.C. § 1983 AND 28 U.S.C. § 1343(a)(3). JURISDICTION TO PROVIDE DECLARATORY RELIEF IS CONFERRED ON THIS COURT BY 28 U.S.C. § 1367.

3. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS PURSUANT TO 28 U.S.C. § 1367.

### PARTIES

4. THE PLAINTIFF, CARNELL HUNNICUTT, SENIOR, IS A PRISONER SENTENCED TO THE CUSTODY OF THE CONNECTICUT DEPARTMENT OF CORRECTION (HEREINAFTER "DOC"). HE IS CURRENTLY HOUSED IN THE NORTHERN CORRECTIONAL INSTITUTION (HEREINAFTER "NORTHERN") IN SOMERS, CONNECTICUT.

5. DEFENDANT ANTHONY J. BRUNO IS THE DOC'S DIRECTOR OF RELIGIOUS SERVICES. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

6. DEFENDANT ANGEL QUIROS IS THE FORMER WARDEN OF NORTHERN. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

7. DEFENDANT LAUREN POWERS IS THE FORMER DEPUTY WARDEN OF NORTHERN. SHE IS BEING SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITIES.

8. DEFENDANT DARRYL LITTLE IS THE FORMER UNIT MANAGER OF 1 WEST UNIT AT NORTHERN. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

9. DEFENDANT ROBERT BERND IS THE RELIGIOUS COORDINATOR AT NORTHERN. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

10. DEFENDANT EDWARD MALDONADO IS THE CURRENT WARDEN AT NORTHERN. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

11. DEFENDANT STEPHEN FAUCHER WAS THE FORMER DEPUTY WARDEN AT NORTHERN. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

12. DEFENDANT KEVIN BRACE IS AN CORRECTIONAL OFFICER AT NORTHERN. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

## FACTS

13. AT ALL TIMES MENTIONED HEREIN, EACH DEFENDANT WAS ACTING UNDER COLOR OF STATE LAW.

14. THE PLAINTIFF PRACTICES THE NATIVE AMERICAN RELIGION.

15. ONE WAY IN WHICH THE PLAINTIFF EXERCISE HIS RELIGIOUS BELIEFS IS BY SMUDGING.

16. SMUDGING INVOLVES INVOLVES THE BURNING OF SACRED HERBS, SUCH AS SAGE, TOBACCO, AND SWEETGRASS. TRADITIONALLY, THE SACRED HERBS ARE BURNED IN A VESSEL, SUCH AS A STONE BOWL, ABALONE SHELL, OR IRON POT.

17. THE PLAINTIFF AND OTHER ADHERENTS OF THE NATIVE AMERICAN RELIGION BELIEVE THAT SMUDGING CLEANSES NEGATIVE ENERGY, THUS RESTORING A SENSE OF PEACE AND PUTTING SPIRITUAL DIFFICULTIES TO REST.

18. IN ORDER TO PARTICIPATE IN SMUDGING AT NORTHERN, ADHERENTS OF THE NATIVE AMERICAN RELIGION MUST PURCHASE THE NEEDED ITEMS FROM THE PRISON COMMISSARY.

19. PRISONERS OF OTHER FAITHS ARE ALLOWED TO KEEP RELIGIOUS ARTICLES PURCHASED FROM THE COMMISSARY IN THEIR CELLS, BUT THIS IS NOT TRUE FOR THOSE WHO PRACTICE THE NATIVE AMERICAN RELIGION. WHEN A PARTICULAR PRISONER'S ABALONE SHELL AND SACRED HERBS ARE NOT BEING USED, THEY ARE REQUIRED TO REMAIN IN THE POSSESSION OF CUSTODIAL STAFF.

20. THIS POLICY HAS MADE IT DIFFICULT OR IMPOSSIBLE FOR THE PLAINTIFF TO SMUDGE, BECAUSE HIS SMUDGING MATERIALS ARE CONTINUALLY MISPLACED OR DISCARDED BY STAFF MEMBERS WHEN THE PLAINTIFF IS TRANSFERRED FROM ONE UNIT TO ANOTHER OR TO OTHER FACILITIES.

21. FOR EXAMPLE, ON OR ABOUT FEBRUARY 5, 2010, WHEN THE PLAINTIFF WAS TRANSFERRED FROM THE 3 WEST HOUSING UNIT TO THE 1 EAST HOUSING UNIT, HIS RELIGIOUS MATERIALS WERE NOT SENT WITH HIM. DESPITE NUMEROUS REQUESTS TO VARIOUS MEMBERS OF THE PRISON STAFF, THOSE MATERIALS STILL HAVE NOT BEEN RETURNED TO THE PLAINTIFF.

22. This was at least the seventh time the Plaintiff's smudging materials have been lost during a transfer from one unit to another or to another facility.

23. Even if he has the funds to do so, the Plaintiff is not able to replace the items that are lost, because his commissary orders for smudging materials often are not processed in an efficient manner.

24. To the Plaintiff's knowledge and belief, prisoners at Northern who practice other faiths have not experienced the same problems regarding timely purchase of religious items from the commissary.

25. On numerous occasions, the Plaintiff has brought these problems to the attention of the Defendants Anthony J. Bruno, Angel Quiros and Lauren Powers, but they have not taken any action to ensure that the Plaintiff is able to practice his religion.

26. On March 18, 2011, the Plaintiff submitted a commissary form to Defendant Bernd to order a smudging refill kit which consists of sweetgrass, juniper, sage, cedar and desert sage.

27. Defendant Bernd signed off on the commissary form dated March 21, 2011, and the order was filled and received April 6, 2011.

28. As per policy the Plaintiff submitted a written request to Defendant Little to smudge. The Plaintiff was forced to smudge in I/West Unit North Rec Yard with prisoner Robin Elliot yelling and cursing interrupting Plaintiff's smudging ritual on April 7, 2011. This also violated DOC policy Administrative Directive 10.8 - Attachment A/1 Section (L).

29. On April 8, 2011, Defendant Little informed the Plaintiff that he would be placed in full restraints (handcuffs, leg irons and tethered chain) each time he wanted to smudge and would not be allowed to smudge on weekends until "you stop filing lawsuits."

30. Defendant Little's personal policy was in retaliation for civil action Hunnicutt v. Kitt, et al 3:10CV857(CSH) in which he is a defendant. Said Defendant's policy violated DOC Administrative Directive 10.8 - Attachment A/1 Section (K) and the Memorandum of Understanding and Use Agreement for Individual Smudging (7).

31. Plaintiff notified Defendants Bernd and Quiros of Defendant Little's illegal policy that was not in compliance with standing DOC policy. Defendant Quiros passed the matter to Defendant Powers who in turned passed it on to Defendant Bernd.

3

32. Plaintiff resumed smudging April 12 through May 2, 2011, without incident. On May 2, 2011, Plaintiff handed Defendant Kevin Brace his smudging materials and abalone shell after completing smudging for safekeeping. Plaintiff requested that unit tracking number NCI-11-0895 of the Nicevision video surveillance disk be preserved showing Defendant Brace as the last person with the Plaintiff's religious materials.

33. On May 3, 2011, custody employees Andrade and Seaver informed the Plaintiff they could not locate his smudging materials. Plaintiff demanded an incident report be created to custody employees Andrade, Seaver, Brace and Fleeting who worked the 1West unit. No one did anything.

34. Later that evening the Plaintiff notified Lieutenant Artiz and Bob Bassett (the former Native American Elder) again, no one did anything.

35. Plaintiff notified Defendant Little this was the <u>eighth time</u> his religious items were lost/misplaced and requested an incident report be created on the incident. No response from Defendant Little was given. Plaintiff contacted Defendant Maldonado to resolve the issue.

36. Defendant Maldonado without an investigation according to D.O.C. Policy Administrative Dir. 1.10 - responded to Plaintiff's request on his missing religious items that occurred on May 3, 2011, "I believe this issue was resolved by Deputy Warden Powers."

37. At no time was the 1West unit locked down nor searched due to serious nature of the items that went 'missing' that posed a safety and security threat. A lighter and a shell that could be sharpened and utilized as an weapon if in the wrong hands in a Level 5 Supermax prison which is highly unusual a search was not conducted for said items.

38. The Plaintiff filed an Freedom of Information Request to inquire if the Defendants initiated and/or created an incident report of the May 3, 2011. As of May 6, 2011, no incident report was created.

41. Plaintiff wrote to Defendant Maldonado on May 5, 2011, concerning his missing religious items. Defendant Maldonado passed the request to Defendant Faucher who did nothing and did not respond to the Plaintiff's request.

42. During this time no response nor remedy was given to the plaintiff. The plaintiff wrote to Defendants Maldonado and Faucher on May 16, 2011. Defendant Faucher passed the matter to Deputy Warden Don Cyr who was allegedly looking into the issue. Defendant Maldonado continued to state the issues concerning the missing religious item on May 3, 2011, were addressed by Defendants Quiros, Powers, Bruno and Bernd.

43. On May 17, 2011, Plaintiff wrote Defendant Bernd about creating an incident report on the missing religious items that occurred for the eighth time. Said Defendant on May 9, 2011, verbally informed the plaintiff he would create an incident report. Defendant Bernd did not respond to the plaintiff's request.

44. Plaintiff received a copy of the incident report that was dated May 19, 2011, that was fabricated by Defendants Bernd and Little to coincide with one another. Said Defendants falsified the report stating only sage was missing along with a lighter and shell. Defendant omitted the sweetgrass, juniper, cedar and desert sage that's sold in the smudging refill kit.

45. Defendant Bernd replaced the plaintiff's missing shell, lighter and sage from another prisoners religious items. The sweetgrass, cedar, juniper and desert sage were not replace and were essential to the plaintiff's religious ritual.

46. Defendant Little falsified the incident report supplemental page dated May 25, 2011, stating "The smudging supplies were completely replaced." At no time was an investigation conducted in compliance with DOC Policy per Admin. Dir. 1.10.

47. Defendant Bernd informed the plaintiff that the replacement religious items were stored in a locked storage box and two keys were available. One key was in Defendants Little possession and the other in the office of the Lieutenants. This occurred on June 2, 2011.

48. On June 3, 2011, Plaintiff requested to smudge but was denied due to Defendant Little took the day off and had the key to the storage box. Custody staff claimed they did not know where the other key was.

49. On June 7, 2011, Plaintiff requested to smudge as per the Native American Smudging Policy - Attachment A/1 of the Administrative Directive 10.8 Implemented by the Connecticut DOC. Custody staff placed another prisoner in the 1West South Rec Yard before the plaintiff had an opportunity to smudge.

5

50. The Plaintiff was placed in the 1West Rec Yard for his recreation period — as was custom, Plaintiff remained in the Rec Yard after the other prisoners rec period was over to smudge. The Plaintiff took his smudging feather to recreation when he was placed in the Rec Yard with other prisoners without incident.

51. DOC Employee Santiago instructed the Plaintiff after recreation that Defendant Little told him the Plaintiff was not allowed to smudge because he'd taken his feather outside during rec, which was an alternative to the Plaintiff's religious practice. Santiago further stated that Defendant Little stated, "If You (Plaintiff) had a problem with it, write it up." Defendant Little's actions were not in compliance with standing DOC Policy.

52. Defendants Maldonado, Faucher and Bernd were notified of the rules implemented by Defendant Little that differed from standing DOC Policy. Plaintiff requested for the incident to be preserved on July 7, 2011, of the denial of his religious practice on the video surveillance disk. Defendant Maldonado ignored Plaintiff's request to preserve the denial of his religious practice.

53. The Plaintiff was forced to repurchase another smudge refill kit to replace the sacred herbs that were not replaced (sweetgrass, cedar, juniper and desert sage) that are essential to his prayers. Defendant Maldonado adamantly refused to replace said items stating to the Plaintiff, "Your missing items have been replaced" with no investigation conducted as per DOC Policy.

54. On July 16, 2011, the Plaintiff was in the 1West South Rec Yard waiting to smudge after recreation. Lieutenant Melvin Saylor informed the Plaintiff per Defendant Little if Plaintiff bought his feather outside to recreation — Plaintiff would not be allowed to smudge.

55. Plaintiff informed Lieutenant Saylor that custody staff are always informed first thing in the morning before recreation if Plaintiff wanted to smudge that day. If custody staff chose to place other prisoners in the Rec Yard before I smudge — I had to wait until the Rec Yard was cleared and smudge alone as per DOC Policy.

56. Plaintiff then asked Lieutenant Saylor for a copy of the new written policy implemented by the DOC Commissioner governing the new rules. To date, the Plaintiff have not received a copy of said rules.

## FIRST COUNT

(VIOLATION OF RIGHT TO FREE EXERCISE OF RELIGION, AS GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION)

1. THE PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE EACH AND EVERY ALLEGATION CONTAINED IN PARAGRAPH 1 THROUGH 56.

2. THE POLICIES AND PRACTICES DESCRIBED ABOVE VIOLATE THE PLAINTIFF'S RIGHT TO FREE EXERCISE OF RELIGION, AS GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.

## SECOND COUNT

(VIOLATION OF SECTION 3 OF RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSON ACT OF 2000 42 U.S.C. § 2000cc-1)

1. THE PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE EACH AND EVERY ALLEGATION IN PARAGRAPH 1 THROUGH 56.

2. THE STATE OF CONNECTICUT ACCEPT FEDERAL FUNDING FOR IT'S PRISONS.

3. THE POLICIES AND PRACTICES DESCRIBED ABOVE IMPOSE A SUBSTANTIAL BURDEN ON THE PLAINTIFF'S RELIGIOUS EXERCISE, IN VIOLATION OF SECTION 3 OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000, 42 U.S.C. § 2000cc-1.

## THIRD COUNT

(VIOLATION OF THE CONNECTICUT ACT CONCERNING RELIGIOUS FREEDOM, CONN. GEN. § 52-571b)

1. THE PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE EACH AND EVERY ALLEGATION IN PARAGRAPHS 1 THROUGH 56.

2. THE POLICIES AND PRACTICES DESCRIBED ABOVE BURDEN THE PLAINTIFF'S EXERCISE OF RELIGION UNDER SECTION 3 OF ARTICLE FIRST OF THE CONSTITUTION OF THE STATE OF CONNECTICUT, IN VIOLATION OF THE CONNECTICUT ACT CONCERNING RELIGIOUS FREEDOM, CONN. GEN. STAT. § 52-571b.

## CLAIMS FOR RELIEF

WHEREFORE, THE PLAINTIFF CLAIMS:

1. INJUNCTIVE RELIEF ORDERING THE DEFENDANTS TO ALLOW THE PLAINTIFF TO KEEP SMUDGING MATERIALS IN HIS CELL AND TO PROCESS HIS COMMISSARY REQUESTS IN EFFICIENT MANNER;

2. COMPENSATORY DAMAGES IN AN AMOUNT AS PROVED AT TRIAL;

3. PUNITIVE DAMAGES;

4. THE COSTS OF THIS ACTION AND REASONABLE ATTORNEY'S FEES; AND

5. SUCH OTHER AND FURTHER RELIEF AS THE COURT DEEMS TO BE JUST AND PROPER.

## JURY DEMAND

THE PLAINTIFF WISHES TO HAVE A JURY TRIAL.

## DECLARATION UNDER PENALTY OF PERJURY

I, CARNELL HUNNICUTT, SENIOR, VERTIFY UNDER PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THIS COMPLAINT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AS TO THOSE, I BELIEVE THEM TO BE TRUE. I VERIFY AND CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE.

EXECUTED AT SOMERS, CONNECTICUT ON APRIL 3, 2012

*[signature]*

THE PLAINTIFF
CARNELL HUNNICUTT, SENIOR #229589
NORTHERN C.I. PO BOX 665
SOMERS, CT 06071